IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIDWEST MEDICAL AND OCCUPATIONAL SERVICES SC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:17-cv-388-RJD ) |
| SSM HEALTH CARE CORPORATION, d/b/a SSM HEALTH and PHYSICIAN SERVICES CORPORATION OF SOUTHERN ILLINOIS, INC., d/b/a SSM HEALTH EXPRESS CLINIC, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants SSM Health Care Corporation (d/b/a SSM Health) and Physician Services Corporation of Southern Illinois, Inc. (d/b/a SSM Health Express Clinic) (Doc. 32), and the Motion for Partial Summary Judgment filed by Plaintiff Midwest Medical and Occupational Services, S.C. (Doc. 35). For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Partial Motion for Summary Judgment is **DENIED**.

I. **BACKGROUND**

Plaintiff Midwest Medical and Occupational Services, S.C. ("Midwest Medical"), filed this action on April 13, 2017, alleging violations of the Lanham Act, the Illinois Trademark Registration and Protection Act, the Illinois Uniform Deceptive Trade Practices Act, and Illinois common law against SSM Health Care Corporation, doing business as SSM Health, and Physician Services Corporation of Southern Illinois, Inc., doing business as SSM Health Express Clinic

(collectively, "Defendants") (*see* Doc. 1).

Plaintiff opened a walk-in health services clinic on August 1, 2013 at 1104 South 42nd Street in Mount Vernon under the name "Express Care of Mt. Vernon" (Doc. 36 at 2). In September 2014, Plaintiff registered its name with the Illinois Secretary of State, registration number 106994, noting first use of that mark on July 1, 2013 (*Id.*).

Defendant SSM Health is a healthcare system headquartered in St. Louis, Missouri that operates healthcare sites throughout Missouri, Illinois, Oklahoma, and Wisconsin, including 24 hospitals, more than 300 physician offices and other outpatient sites, 10 post-acute care facilities, and other services and organizations (*see* Doc. 32-7). SSM Health, through a subsidiary (presumably Physician Services Corporation of Southern Illinois, Inc.), owns and operates a walk-in health services clinic at 602 South 42nd Street in Mt. Vernon (*see* Doc. 27; *see also* Doc. 36 at 2). Defendants' clinic opened in 2014 under the name Good Samaritan Convenient Care (Deposition of Christie Foster, MD, Doc. 32-4 at 13-14). Near the end of 2015 and early 2016, SSM Health began rebranding many of its healthcare sites and, as part of this initiative the name of the clinic at issue was changed from "Good Samaritan Convenient Care" to "SSM Health Express Clinic" (Deposition of Lisa Glarner, Doc. 32-9 at 10-11; *see* Docs. 34 and 34-1).

It is undisputed that both Express Care of Mt. Vernon and SSM Health Express Clinic operate "urgent care" facilities that offer similar services[1]. It is also undisputed that the parties are the only two urgent care centers in Mt. Vernon. The owners of Midwest Medical, Dr. Christie Foster and APN Christy Kelley, testified at deposition that since Defendants changed the name of

---

[1] In general, urgent care facilities are dedicated walk-in clinics intended to handle urgent, but not life-threatening, medical conditions (Expert Report of Patrice Pash, B.S.N., R.N., Doc. 32-1 at 7, ¶ 18). Typically, urgent care facilities have extended hours compared to a doctor's office and do not require appointments (*Id.*). These facilities usually have an x-ray machine on-site and can provide basic procedure services such as suturing and casting (*Id.* at ¶ 19). They may also have limited testing capabilities.

their urgent care facility to SSM Health Express Clinic in October 2016, they noticed significant public confusion between their clinic and Defendants' clinic (*see, e.g.,* Deposition of Christy Kelley, Doc. 36-6 at 27). Indeed, Plaintiff cites to over one-hundred instances wherein its employees documented actual confusion from patients, insurance companies, and others concerning the clinics (*see* Doc. 36-4).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## III. DISCUSSION

"Congress passed the Lanham Act in 1946 to 'federalize' existing common law protection of trademarks used in interstate commerce." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001) (citation omitted). "The Lanham Act provides national protection of

trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198 (1985). The Lanham Act imposes liability upon:

> Any person who, on or in connection with any goods or services … uses in commerce any word, term, name, symbol, or device, or any combination thereof … which is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. 1125(a)(1)(A).

"To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). However, "a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant prima facie protection as a trademark." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 610 (7th Cir. 1986).

A mark is only entitled to protection under trademark law when "that mark specifically identifies and distinguishes one company's goods and services from those of its competitors." *Platinum Home Mortgage Corp. v. Platinum Financial Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). When the mark at issue is not registered with the United States Patent and Trademark Office, "the burden is on the claimant" to establish that it is entitled to protection. *Id.* at 727 (citation omitted).

Marks are classified into five categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The level of protection afforded to a mark depends on where it

falls on the spectrum of "distinctiveness," the least distinctive being the "generic" mark, to the most distinctive being the "fanciful" mark. *Id.* Generic marks are those that are commonly used, do not identify any particular source, and are not entitled to any trademark protection. *Platinum Home*, 149 F.3d at 727. A generic mark does not identify a product's source, but "merely specifies the genus of which the particular product is a species." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). A common source of evidence for a generic term is the dictionary. *Id.* Further along the spectrum of "distinctiveness," descriptive marks describe "the ingredients, qualities, or characteristics of an article of trade or a service." *Platinum Home*, 149 F.3d at 727. Descriptive terms are generally not protectible as trademarks "both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature." *Liquid Controls Corp.*, 802 F.2d at 936. (citations omitted). These marks do not receive trademark protection unless the mark "acquires secondary meaning 'in the collective consciousness of the relevant community'." *Platinum Home*, 149 F.3d at 727. In comparison, the latter three categories of marks (suggestive, arbitrary, or fanciful), are entitled to trademark protection as their "intrinsic nature serves to identify a particular source of a product," deeming the marks inherently distinctive. *Two Pesos*, 505 U.S. at 768.

Here, Defendants assert that Plaintiff does not possess enforceable trademark rights in "Express Care" as it is merely a generic term for urgent care clinics, or at most, descriptive of urgent care clinics, and Plaintiff cannot demonstrate acquired distinctiveness from the record. Defendants further argue that they are entitled to a fair use defense that precludes any trademark infringement liability. Plaintiff posits that it is entitled to summary judgment under Section 43(a) of the Lanham Act as "Express Care of Mt. Vernon" is a protectable name and Defendants'
Page **5** of **12**

adoption of "SSM Health Express Care" is likely to confuse patients.

At the outset, the Court notes that in a trademark infringement case, the classification of a term as descriptive, the determination that a defendant's use was a non-trademark use in good faith, and the finding that consumers are likely to be confused as to the origin of a defendant's products, are questions of fact. Nevertheless, these issues may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *Packman*, 267 F.3d at 637 (internal quotation omitted).

Defendants first ask the Court to find that "Express Care" is merely a generic term not entitled to trademark protection. Defendants posit that Plaintiff's facility is a "species" within the broader classification of the "genus" of an express care or urgent care facility. The Court disagrees with Defendants' characterization. The phrase "express care" is not found in a dictionary and the same is not necessarily used to designate the actual services being offered by Plaintiff. Thus, there is insufficient evidence in the record for the Court to find, as a matter of law, that the mark at issue is generic.

The Court finds that the core issue here is whether "Express Care of Mt. Vernon" is a protectable trademark or whether it lacks protection because it is a descriptive phrase with no acquired secondary meaning. To determine if a mark is descriptive or suggestive, the court uses the "degree of imagination test." "[I]f the mark imparts information directly, it is descriptive, however if the mark stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir. 1992) (identifying "Thirst Aid" as descriptive when used for a drink that quenches thirst and "Roach Motel" as suggestive when used for an insect trap). Here, the Court finds that "Express Care of Mt. Vernon" is not a protectable trademark because it is merely a descriptive

term; it refers to a characteristic of Plaintiff's product that references the geographic region in which it is located. No operation of the imagination is necessary to connect "Express Care" with Plaintiff's fundamental operations — the provision of expeditious medical care. Indeed, Plaintiff's corporate representative testified that "Express Care of Mt. Vernon" was chosen, at least in part, because it was "more descriptive" of Plaintiff's offerings (Doc. 32-4 at 10).

Because this Court has found "Express Care of Mt. Vernon" to be descriptive, and not suggestive, the phrase is not protected unless Plaintiff can establish that it has developed a secondary meaning in the mind of the public. "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark." *Platinum Home Mortgage Corp. v. Platinum Financial Grp., Inc.*, 149 F.3d 722, 728 (7th Cir. 1998) (citation omitted). A court may consider several factors in deciding whether secondary meaning has been acquired or established, including: (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys. *Id.*

Plaintiff has provided limited evidence concerning the amount and manner of advertising but does not rely on this evidence in their briefing. Rather, Plaintiff asserts that its trade name has acquired secondary meaning because there is abundant evidence of actual consumer confusion. In urging the Court to consider its evidence of actual confusion, Plaintiff relies on Judge Wood's dissent in *Platinum*. In her dissent, Judge Wood determined that "[a]ctual confusion logically *must* be an indication of at least some amount of secondary meaning." *Id.* at 733 (Wood, J., dissenting) (emphasis in original). Judge Wood noted that "[i]f buyers are confused, then this also means that they must have recognized plaintiff's word as a trademark and associated it only

with the plaintiff." *Id.*

Although Judge Wood's dissent is noted, the majority opinion in *Platinum* found that consumer confusion does not exist within the scope of an infringement claim when the mark is not entitled to trademark protection. *Id.* at 729. In further discussion, the Court remarked that *de minimus* evidence of actual confusion does not necessarily establish a likelihood of consumer confusion, but such a statement appears to apply to the second prong of a Lanham Act claim — that the defendant's use of the mark is likely to cause confusion among consumers. A court does not need to consider this prong unless a protectable trademark has been found. Because the majority opinion binds this Court, its analysis applies here and the Court finds that evidence of actual consumer confusion is not a factor that may properly be considered in analyzing whether a mark has acquired secondary meaning. Further, there is insufficient evidence in the record concerning the relevant factors to find secondary meaning as there is only limited evidence of Plaintiff's advertising efforts, which, as the Seventh Circuit found in *Platinum*, is wholly circumstantial and does not necessarily indicate that consumers associate a mark with a source. *Id.* The Court also notes that the short time in which Plaintiff was using its name (less than three years) does not weigh in its favor for a finding of secondary meaning. *Id.* at 728-29 (agreeing with the district court's conclusion that Platinum Mortgage's evidence of sales, advertising, and promotions, in the context of the minimal length of time involved (three years), fails to indicate it could establish that it had acquired secondary meaning). Accordingly, summary judgment is appropriate in favor of Defendants as Plaintiff did not have a protected trademark.

The Court also finds that even if there were a protectable trademark and Defendants' use of the same was likely to cause confusion among consumers, Defendants would prevail on their fair use defense.

To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015) (citation omitted). Defendants contend that its use of the phrase "express clinic" meets the requirements for a fair use defense. Plaintiff asserts that Defendants cannot prevail on their fair use defense because they cannot demonstrate beyond a question of fact that they did not adopt the name "SSM Health Express Clinic" in any way other than a trademark or that they acted in good faith in adopting the "Express Clinic" name.

### *Non-trademark use*

Defendants assert that the phrase "express clinic" has not been used as a trademark. In support of their position, Defendants provide that SSM Health's style guide requires that the phrase "express clinic" always be used within the approved name "SSM Health Express Clinic" (*see* Docs. 34-3 to 34-7; Doc. 32-17). Moreover, Defendants explain that in its marketing and signage, SSM Health is dominant as compared to "express clinic." Thus, Defendants assert that consumers would immediately understand that the clinic at issue is associated with SSM Health. In other words, consumers immediately understand that the source of the product is SSM Health.

"A word or phrase functions as a trademark when it is used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *Sorensen*, 792 F.3d at 722 (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 953 (7th Cir. 1992)). Where a slogan or phrase does not serve to create an association in the public mind between the product and its source, courts have held that the phrase is not being used as a mark. *See, e.g., Platinum Home Mortgage Corp.*, 149 F.3d at 728 (finding that "platinum" does not identify one

particular source or designate the specific origin of the services); *see also Packman*, 267 F.3d at 639-40 (finding that "the joy of six" does not identify as its source the Chicago Tribune Company).

Here, the record does not support Plaintiff's argument that Defendants used "Express Clinic" to identify itself as the source of their product. Rather, the marketing and signage prominently displays "SSM Health" and identifies SSM Health as the source of the product (*see* Docs. 32-18 to 32-20). Significantly, "Express Clinic" is much less prominent and noticeable than "SSM Health" on the relevant signage. *See Sorenson*, 792 F.3d at 724 (7th Cir. 2015). Although "Express Clinic" is used to describe a characteristic of the product, it does not identify the particular source of the product. While the Court acknowledges Plaintiff's argument that Defendants' use of "Express Clinic" as part of its corporate name necessarily means it was used as a mark, Plaintiff fails to cite to any precedent in this Circuit to support such a conclusion. Because the Court concludes that Defendants' inclusion of the phrase "Express Clinic" does not identify the source of the product being offered or create awareness in the public as to the uniqueness of the service, the Court finds that Defendants' use of the same was "otherwise than as a trademark." *Packman*, 267 F.3d at 640.

### *Descriptive use*

"A descriptive term ordinarily names a characteristic of a product or service." *Sorensen*, 792 F.3d at 724 (citation omitted). Defendants posit that the phrase "Express Clinic" is descriptive of Defendants' services. Plaintiff makes no argument to the contrary. Thus, the Court finds it clear that the phrase "express clinic" describes a characteristic of Defendants' product insofar as the clinic provides medical treatment in a quick and convenient setting.

### *Good faith use*

The proponent of a fair use defense must also show that it used the plaintiff's mark fairly

and in good faith. *Id.* at 725.  Here, Defendants assert that there is no evidence of bad faith in their selection and use of "SSM Health Express Clinic" as said name was chosen to convey the nature of the services offered and reflects the standardized naming convention employed for SSM Health's walk-in clinic, retail clinic, and urgent care locations.  Plaintiff contends there is evidence of bad faith as Julie Long, SSM's Assistant Vice President of Strategic Development for the Southern Illinois region, conveyed concern regarding the name change to Lisa Glarner, SSM Health's System Brand Manager.   In particular, Plaintiff notes Glarner's deposition testimony that Long expressed concern that there was a competitor, Express Care of Mt. Vernon, that had a similar descriptor in their name and they were concerned about what potential impact that might have on their business (Deposition of Lisa Glarner, Doc. 36-1 at 27-28).  More specifically, Long testified that because both names would have "express" in them, she attempted to reach out to Dr. Foster (an owner of Express Care of Mt. Vernon) as a professional courtesy (Deposition of Julie Long, Doc. 36-2 at 25).  Glarner explained that the brand workgroup discussed the issue and determined that there would not be any concern with the naming so Defendants continued to proceed with the renaming of their facility (*Id.* at 29 at 32).  Plaintiff contends that this evidence demonstrates that Defendants knew their name change would affect its clinic and had incentive to use its financial might to squeeze Plaintiff.

Despite Plaintiff's contention, however, mere knowledge of its mark is insufficient to establish that Defendants acted in bad faith.  *Packman*, 267 F.3d at 642.  Defendants' "good faith 'can be judged only by inquiry into their subjective purpose'" in using the phrase.  *Id.* (quoting *M.B.H. Enter. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980)).  There is sufficient evidence in the record, which Plaintiff has failed to rebut, that the naming decision was related to Defendants' rebranding efforts and reaching consistency in their naming conventions.

For these reasons, the Court finds that Plaintiff failed to adduce evidence creating a genuine issue of material fact as to any of the three elements of the fair use defense.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff does not have an enforceable trademark in "Express Care of Mt. Vernon" or "Express Care," as required to pursue a claim under the Lanham Act. Because the elements for Plaintiff's claims under the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/60, Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, and Illinois common law must be resolved according to the principles set forth under the Lanham Act, summary judgment in Defendants' favor is appropriate on all claims set forth in Plaintiff's Amended Complaint. *See KJ Korea, Inc. v. Health Korea, Inc.*, 66 F.Supp.3d 1005, 1012 (N.D. Ill. 2014) (citations omitted). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Partial Motion for Summary Judgment is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: December 10, 2018**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**